FILED

2022 FEB 11 PM 2: 26

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

# UNITED STATES DISTRICT COURT
## *FOR THE*

## MIDDLE DISTRICT OF FLORIDA - ORLANDO DIVISION

| | | |
|---|---|---|
| ZOE AJJAHNON, | : | Case No.: _____ |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| -v- | : | **COMPLAINT** |
| | : | |
| AMERILIFE OF NORTH CAROLINA, LLC | : | **Jury Demand** |
| Doing Business As (d.b.a.) | : | |
| AMERILIFE AND HEALTH SERVICES, LLC., | : | |
| | : | |
| Defendant | : | |

---

### CIVIL ACTION COMPLAINT and JURY DEMAND

---

I, Zoe Ajjahnon plaintiff in this matter reside at <u>street address,</u> 7457 #D Daniel

Webster Drive, Winter Park, Orange County, Florida, 32792; <u>Ph.</u>: 850-518-2739;

<u>Email</u>: <u>zoeloip@outlook.com</u> pursuant *18 U.S.C. §§1341-1342*, that makes it

illegal to use the U.S. Postal Service to carry out Fraud and Swindle *(§1341)* and

illegal to use the U.S. Postal Service to advance the use of Fictitious Name and

Address (*§1342*) in carrying out Fraud and Swindle under *sec.1341,* bring this civil

action against defendant, Amerilife of North Carolina, LLC. also known and doing

business as Amerilife and Health Services, LLC / Amerilife Group, LLC.

## TABLE OF CONTENTS

**Page**

THE PARTIES …………………………………………………….. 1

JURISDICTION ……………………………………………….……... 2

STATEMENT OF CLAIM ………………………....…………………….. 2
  I. BACKGROUND ……………………………………………………. 2
  II. CLAIMS ……………………………………………………….. 14

ARGUMENT IN SUPPORT OF GRANT OF RELIEF ……………..……… 16

  I.     MAIL FRAUD IS SUBSTAIATED WHEREIN DEFENDANT
        INTENDED TO AND DEVSISED A SCHEME THAT DEFRAUD
        AND WHEREIN DEFENDANT, AMERILIFE PERFORMED
        SPECIFIC FRAUDULENT ACTS. …………………………….…..19

  II.    DEFENDANT USED THE UNITED STATES POSTAL SERVICE/
        THE MAIL TO EXECUTE, ATTEMPT TO EXECUTE FRAUD AND
        EXTORT MONEY FROM PLAINTIFF …….……………………..… 29

  III.   DEFENDANT' INDEPENDENT AGENT AGREEMENT IS A FRAUD
        THAT SCAMS MONEY FROM INSURANCE SALES AGENTS FOR
        NONEXISTENT / SHAM E&O INSURANCE COVERAGE IN
        CONTRACTS OF UNINSURABLE INTERESTS AND THEREFORE
        UNENFORCESABLE / CLAIMS MAY NOT BE CONSIDERED FOR
        COVERAGE ……………………….……………………………… 30

CONCLUSION ……………………………………………………… 36

CERTIFICATION AND CLOSING STATEMENT UNDER F.R.CIV.P. 11 …36

i

## TABLE OF AUTHORITIES

**Pages**

### CASES

*Billian v. Mobil Corp.,* 710 So.2d 984, 991 (Fla. 4th DCA 1998) ……….......... 35

*Brett Sokolow et. al v. Dominique Damico et. al* (FLSD Docketed, 12/26/19) … 35

Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) ……………………………………………………..…18

*Moore v. United States*, 160 U.S. 268, 269 (1895) ……………………….……….32

*Pereira v. United States*, 347 U.S. 1, 8 (1954) …………………………...…….18

*Schmuck v. United States,* 489 U.S. 705, 721 n. 10 (1989) ……………….……18

### U. S. CODES AND FLORIDA STATUTES

*28 U.S.C. § 1332* ………………………………………………………….2

*28 U.S.C.§1654* …………………………………………………………. 16

*18 U.S. Code § 664* ……………………………………………….…. 31

*18 U.S.C. §§1341-1342* ……………………………………………1, 14, 16, 17
   *§1341* …………………………………………………..1, 17, 29
   *§1342* ………………………………………………….. 1, 17, 29
Florida Administrative Code *RULE 69B-124.002 F.A.C.* ………………….…. 21

*Fla. Statute sec. 836.05* …………………………………………………… 27

*Fla. Stat. sec. 812.014(1)(b)* ………………….....………………………….... 31

### MISCELLANEOUS RESOURCE

*U.S. Bureau of Labor statistics, Occupational Employment and Wages* May 2020, Oct. 29th 2021 updated ……………………….…..……………………….....15, 36

## **EXHIBITS APPENDED**

Defendant' letter of termination, dated Dec. 15th 2021…………………….. **Ex. 1a**

Defendant' termination package Notice By Fair Debt Collections page
Threat of Collections and Fictious address given in …………………..….. **Ex. 1b**

Defendant' termination package Spread Sheet ………………...………… **Ex. 1c**

Copy of termination package envelope …………………….……………. **Ex. 1d**

Acknowledgment of iPad Receipt and Return, dated 12/01/21…………….. **Ex. 1e**

Amerilife and Health Services, INDEPENDENT AGENT AGREEMENT in
entirety, pages numbered 1- 51 ………………………………………...….. **Ex. 2**

Defendant' Certificate of Liability Insurance proffered plaintiff ……….…. **Ex. 3**

Plaintiff' Cancellation Notice of biBerk Professional Liability (E&O) Policy.. **Ex.4**

Plaintiff' Report to Florida Department of Financial Services, Division of
Investigative and Forensic Services RE.: Insurance Fraud Practices at
Amerilife And Health Services of Central Florida, dated Dec. 28th, 2021…. **Ex. 5**

Email of Ex. 5 to defendant with request to be "Released" from Amerilife,
dated, 12/28/2021 …………………………………………………. **Ex.6a -6b**

iii

Email titled, Zoe Ajjahnon Request For Written Documentation Of Rescind Of Amerlife $500 Money Demand Made On Me And Of Immediate Release From Amerilife, dated 12/31/2021 ……………………………………....… **Ex. 7**

Plaintiff' further Report Insurance Fraud Practices at Amerilife And Health Services of Central Florida to Florida Department of Financial Services, Division of Investigative and Forensic Services, dated 1/2/2022 …………… **Ex. 8**

Plaintiff' "Questions About Amerilife E&O/Professional Liability Coverage" put to policy Broker Calsurance and Calsurance' Response, dated Dec. 29th 2021 and Dec. 30th 2021, respectively ……………………… **Ex. 9**

Plaintiff' "Amerilife Insurance Fraud Pinellas County Online Consumer Complaint, Record CP-INQ-22-00025, dated 1/13/2022 …………………... **Ex. 10**

Pinellas County Consumer Protection letter of forward of Complaint/Ex.10 to Florida Department of Financial Services, dated January 14th 2022 …...…… **Ex.11**

Email Re.: [Plaintiff's] 1099 Form Inquiry ………………………... ……..… **Ex. 12**

-------

Related Miscellaneous Appendix of "Public Interests" generated Consumer Report to the Federal Trade Commission (FTC) of defendant's fraudulent business practices, FTC Report Number: 143861663, date report submitted, 1/19/2022 - - **Misc. App.**

iv

## **THE PARTIES**

### *Plaintiff,*

I, Zoe Ajjahnon of <u>street address,</u> 7457 #D Daniel Webster Drive, Winter Park,

Orange County, Florida, 32792; <u>Ph</u>.: 850-518-2739; <u>Email</u>: <u>zoeloip@outlook.com</u>

pursuant *18 U.S.C. §§1341-1342*, that makes it illegal to use the US Postal Service

to carry out Fraud and Swindle *(§1341)* and illegal to use the US Postal Service to

advance the use of Fictitious Name and Address (*§1342*) in carrying out Fraud and

Swindle under *sec.1341,* bring this civil complaint against,

### *Defendant,*

Amerilife of North Carolina, LLC. also known and doing business as

Amerilife and Health Services, LLC / Amerilife Marketing Group, LLC. /

Amerilife Group, LLC., under the jurisdiction of North Carolina gives the

following information about itself:

**Company Number** 0769811; **Status** Current Active; **Jurisdiction** North Carolina;

**Incorporation Date** March 2005 (almost 17 years ago); **Registered Address** 2626

Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608;

**Previous Names** Ameri-Life & Health Services of Mecklenburg LLC;

1

**Agent Name** Corporation Service Company. In North Carolina Amerilife gives the

**street address**,11016 Rushmore Drive, Suite 175 Charlotte, North Carolina,28277;

 **telephone number**, 704 -910-0181 or 704-846-2280.

**Principal Office** located at, 2650 McCormick Dr. Ste.200S,

Clearwater, FL 33759; Ph. 727-726-0726.

In Florida the company <u>License No.</u> is, L056750 and <u>License Type</u>: 21-05.

Amerilife markets only Life and Health insurance plaintiff was informed by the

company' North Carolina office. The company purports itself to have over 800

employees in 66 companies in its Marketing Group, and in 2021 states itself to be

valued at $ one (1) billion USD, a Dun & Bradstreet Business report puts its annual

revenue at $160.00 million.

## JURISDICTION

The Court' jurisdiction is invoked under <u>*28 U.S.C. §1332*</u> where diversity of

citizenship exists in plaintiff' citizenship in Florida and defendant' in North

Carolina, the jurisdiction of incorporation of Amerilife and Health Services, LLC.,

and remedial damages sought is $474,050.

## STATEMENT OF CLAIM

I. BACKGROUND

On or around September 20th 2021, plaintiff received a call from Amerilife' office

2

in Winter Park, Orange County, FL stating to be in receipt of her resume and is extending a job interview. Plaintiff had never heard of this company before but did accept the offer of a possible insurance sales agent opportunity.

Plaintiff had recently, August 18, 2021, acquired a license to sell Life, Health and Variable Annuity insurance products in the state of Florida, (Ex. 13) and at the time of defendant' job proffer was already appointed with several carriers and had purchased an Errors and Omissions (E&O) professional liability insurance policy from biBerk Insurance, (Ex. 4). The interview ended with an immediate job offer. Defendant stressed the company offers its own E&O coverage and monthly premiums are deducted from sales commissions, explaining that this necessity is to offset 'chargebacks'- the need to return commission paid in advance of a policy that is subsequently cancelled; further, defendant states, these commission deductions go to what Amerilife calls a 'bond' that must be maintained at at least $2,000 for technological services and rent, in addition to E&O insurance. Technological services, defined in defendant' onboarding papers called an Independent Agent Agreement (Ex. 2) is use of defendant' telephone and an iPad that defendant provides to access sales leads (Ex. 2, pg. 38); rent is for "office space" given as one (1) desk and one (1) chair. (Ex. 2, pg.39)

On Oct. 1st 2021 plaintiff signed defendant' onboarding Independent Agent

3

Agreement to sell insurance with the carriers Amerilife represents. Plaintiff was forced to cancel her existing E&O coverage at $41.58/month, to purchase defendant' at $50 /month (Ex. 4 & Ex. 2, pg. 36, respectively) with the understanding that premium payments would be deducted from her sales commissions. At no point was plaintiff informed that the premiums must be paid otherwise.

On Dec. 1st 2021 plaintiff initiated a 2-month leave of absence from the company at the recommendation of managerial staff after having done no business with defendant since the Oct.1, '21 Agreement.

Plaintiff subsequently received a letter/package by regular U.S. Postal Service mail, dated, Dec. 15th 2021 stating that her termination from the company was processed on Dec. 3rd 2021 - no reason given - and for defendant' demand of $500 pursuant what defendant calls a 'negative bond balance'. (Ex. 1) The termination letter is authored by defendant' John Schrieffer, VP Career Agency Operations, (Ex. 1a) annexed is a page titled, Notice Required by Fair Debt Collection Practices Act, threatening the $500 claim will be placed in collections should defendant not receive it within thirty (30) days of the mailing, it gives further that, "Written requests should be addressed to: Tracy Miner, 2650 McCormick Dr., Suite 300L, Clearwater, Florida, 33759. (Ex. 1b)

4

The mailing included also a spread sheet itemizing the $500 claim. The items on this list are each and every one of them completely bogus /false/ without merit. Defendant' claim made demand of plaintiff for three (3) E&O payments of $50 each, the carrier named is Amerilife and Health Services / AMLHS on this spread sheet; further made claim to three (3) appointment fees of $60 each, plaintiff has never heard of these carriers nor of appointment fees with any carrier for that matter; additionally, the claim demanded two (2) months rent at $50/month, and 2 charges for technological services fees at $25 each. (Ex. 1c).

### *Fraudulent Representations of Defendant's Independent Agent Agreement / Onboarding Papers*

Concerning the demand for E&O premium payments, the Independent Agent Agreement (/Agreement) states the monthly premiums collected will be sent to MGA Insurance Group -Pg. 36 of the Agreement. MGA Insurance Group is the same company as GAINSCO and carries *only* personal auto insurance coverage. At issue here is not that defendant, that claims to market only life and health insurance, names itself as carrier of the E&O coverage on the spread sheet, but rather the material insidious, round illegality of the fraudulent representation of MGA Insurance Group. For one, as established MGA Insurance Group provides only personal auto insurance, and two, MGA Insurance Group does not appear on

5

the Certificate of Holding of the purported Group policy E&O Insurance coverage, the certificate names, Markel American Insurance Co. as affording Insurer and Brown & Brown Program Insurance Services, Inc. d.b.a. CalSurance Associates as Producer/ Broker for the policy. However, neither Affording Insurer, Markel nor Broker Calsurance has knowledge of MGA Insurance Group with respect to defendant' E&O insurance policies, as in two whereas defendant has established no less than two (2) such policies with Markel, one dubbed an Independent Agent policy and the other a Career Agent policy. It should be noted that the first and only reference (outside of Calsurance' explanation of defendant's duplicitous certificate of holding) to a "Career Agent (/Agency)" in supporting Exhibits is in defendant' termination letter, Career Agent or Career Agency is not found in the Agreement / Independent Agent Agreement from whence the E&O sham.

Plaintiff was given a certificate of holding only after termination from defendant and upon expressed request made to onboarding personnel. (Ex. 3) Numerous attempts to contact the agent releases office for agents no longer 'bonded' to / working with defendant had met with no response. At this time also, plaintiff initiated investigation at Florida Department of Financial Services, Division of Investigative and Forensic Services, (Ex. 5) into defendant' possible fraud in light of: the bogus claim of the $500 debt; that defendant had given

6

plaintiff a fictitious street address for its agent releases office; and, that defendant ignored requests sent to the email address given in the termination packet for plaintiff' attempt to resolve this issue within the 30 days before defendant carries out the threat to place this fraudulent demand for $500 in debt collections. (Ex. 6a – 6b)

On Dec. 29th 2021, Captain John Savino of the DFS, Division of Investigative and Forensic Services, Bureau of Insurance Fraud, Orlando office contacted plaintiff communicating defendant' proffer of an/the Independent Agent policy certificate of holding showing a policy term of 10/1/21-10/1/22 purporting to be E&O policy that plaintiff was under.

Upon noting a discrepancy in effective policy term dates, for the policy the DFS captain was given and the one plaintiff had, I spoke with policy broker, Calsurance. Calsurance explained that the certificate of holding for purported E&O coverage generated from the Independent Agent Agreement given plaintiff is not the Independent Agent policy defendant gave the DFS but is another policy called the Career Agent policy. The term 'Career Agent' does Nowhere appear on the Independent Agent Agreement – in reference to E&O coverage or otherwise.

The Independent Agent policy identifying number is MKLM7PLCA00037, one digit off the Career Agent policy number plaintiff was given which is

7

MKLM7PLCA00038. However, Markel informed plaintiff on Dec. 29th 2021 (as in before Jan. 1st '22) of quite a different policy number for the same Career Agent policy for Amerilife; that number is MKLM7PLCA00053. Calsurance explained that because the Career Agent policy cycles with each calendar year, the policy number changes on January 1st each year – wherefore the two different policy numbers for the same policy and explains further of this business of two different product/policy ID numbers for the same/one insurance product/policy existing at the same time in Markel' computers is because one number is in anticipation of the replacing the other number on Jan. 1st '22. (Ex. 9) <u>The policy remains the same only the identifying policy number changes.</u> Plaintiff' call to Markel on or around January 4th 2022 returned that both MKLM7PLCA00038 and MKLM7PLCA00053 exists /continues to exist - in their computers as ID number for the one/ the same (Career Agent) policy. Puzzling Markel acknowledged.

The underwriter for defendant' agent policies is Michael Driscoll, Ph.:212-898-6649, Markel informs. Plaintiff' question to Mr. Driscoll on Jan. 27th '22 on the difference, if any, between the Independent and Career Agent policies did not distinguish the two, but rather compounded the issue giving in fact, in addition to MKLM7PLCA00037 another policy number, MKLM7PLCA00057 exists for the Independent Agent policy.

8

This supports what appears to be measures to evade IRS regulations in these fraudulent products, and as to the Independent Agent policy, it is without even the spurious business (/cover) of tying a policy renewal date to changing the policy ID number as with the Career Agent policy. The Independent Agent policy has different term ending dates not tied to the first of the calendar year. Markel American Insurance Co. is apparently not an innocent pawn of defendant' in this scam E&O insurance fraud.

As below argument develops, it is not a mere matter of semantics defendant variably naming the policies Independent Agent or otherwise Career Agent policy, it is crucial to defendant's fraudulent scheme.

The scam' purposeful 'career agents' of defendant' Independent Agent Agreement are given the policy number of MKLM7PLCA00038 that is not or is no longer viable for coverage under this scheme where there is this other number of MKLM7PLCA00053. The other policy, the Independent Agent policy, a convenient one digit off the Career Agent' at MKLM7PLCA00037, provides a proffer, however specious, for investigators into the existence of an Independent Agent Agreement E&O policy that plaintiff signed. This MKLM7PLCA00037 policy runs the regular year from the start date of the policy as opposed the calendar year.

9

This is Not the policy given from the Independent Agent Agreement.

Defendant' itemized list claims money due for rent, technical services, and appointment fees. There is nothing in the Agreement that states the agent will be billed to be (re) appointed with carriers.  Plaintiff was already appointed with several of the carriers that defendant represents but was told she needs to end those existing appointments. Plaintiff at no point ever paid to be appointed with a carrier. In fact, defendant' own onboarding personnel is also unaware of such a fee with a carrier.

Plaintiff did not use defendant' technical services - at no point used defendant' telephone nor was able to access, that is, use the tech. services of the iPad for leads to do business - each and every such attempt read "0 leads" on defendant' iPad that plaintiff returned on Dec.1st 2021. (iPad Return Receipt, Ex. 1e)

As to rent, plaintiff was never assigned the one (1) desk and one (1) chair of a purported "office space" of the Agreement. Not only was this not afforded in Oct. '21 – Nov. '21, the made-up charges bill for the month of Dec. '21. Plaintiff' leave of absence began Dec. 1, 2021.

Defendant' fraud that sets, at the higher end, the average cost for a year' term E&O coverage, schemes a minimum of $500 from each scam Agreement signed. At page 37 of the Agreement (following on the fraudulent representations of the

E&O scam at pg.36) it states, "in the event that an agent's Agreement is terminated for any reason, including upon your own request … your agent bond will be charged a minimum of $500….". Where page 37 speaks to 'return of items' totaling that amount, plaintiff was in receipt of None of these except for the iPad that was no longer in my possession on Dec. 3rd 2021, the date defendant processed termination, no reason given.

The individual scammed/lured into defendant' Agreement may not start before a 3-day course at 'Amerilife University', offering training of defendant' sales theatrics for its invasive sales practice of 'door-knocking' put in light of, "the prospect' house is on fire, wherefore the rationale for 'door-knocking', the presumed urgency motivates the prospect to immediately buy insurance from the Amerilife agent. This complete with directional cues of how to lead the prospect into the kitchen to close the sale. The leads provided at this training are equally 'old'/archaic/not viable, literally and figuratively, meaning the name of the 2-years-ago dead individual continues to be on defendant' call list. At the end of this 'training' defendant' bait-and-switch gives to the agent $350.

Defendant' fraudulent practice schemes for the return of this money, and that with interest. For those not with the company long enough to defraud12 months of E&O premiums, the scam lists other made-up charges that total at minimum $500

11

- as in instant case – that would have defendant realize the $350 returned at a whopping 43% interest.

In the termination mailing 3-pages packet, the page threatening to put the $500 money demand in debt collections if not given to defendant within thirty (30) days states, "Written requests should be addressed to: Tracy Miner, 2650 McCormick Dr., Suite 300L, Clearwater, Florida, 33759. Plaintiff' telephone contact with Ms. Miner's office about this address returned, "there is no such address." Defendant does business from this Clearwater address in fact - perhaps minus the / a fallacious Suite 300L; however, <u>what is material here is that the address for Tracy Miner is correctly *NOT* the (Clearwater) address given by defendant</u> but Perhaps -11016 Rushmore Drive Suite 175 Charlotte, NC 28277; Ms. Miner' telephone number is 704-910-0181.

Defendant did not respond to any telephone messages plaintiff left at this number. Defendant gives and stresses that inquiries should be sent to the email: agentreleases@amerilife.com ; however, whereas defendant also did not respond to any of plaintiff' email outreaches to resolve her request to cancel the fraudulent demand for money and properly release / sever plaintiff' relations with defendant, plaintiff filed a Consumer Complaint of this fraud with Pinellas County on January 13th 2022, ID.: Record CP-INQ-22-00025, (Ex. 10 ) in a final attempt to prevent

12

the $500 debt collections that will certainly compromise plaintiff's ability for future insurance carrier appointments, effectively derailing her career in insurance sales / plaintiff' ability to earn a living in the industry.

Pinellas County forwarded the matter to Florida's Department of Financial Services (DFS) on January 14th 2022 since it is outside their jurisdiction. (Ex. 11)

In light of the frauds, plaintiff' earlier reports on Dec. 28th 2021 and Jan. 2nd 2022 to the DFS, Division of Investigative and Forensic Services, advanced the same appeal to defendant to: "Rescind of its $500 [fraudulent 'bond'] money demand made on [plaintiff] and [for] Immediate release from Amerilife" [to] prevent a collection blight on her record that risks plaintiff' ability for future employment in insurance sales. (Exs. 5 & 8, respectively).  Plaintiff was given the reference number, T21-15644 (Dec. 29th 2021) from the local/ Orlando Bureau of Investigations of this outreach.

Plaintiff' communications to the DFS argue: "where Amerilife' is, *a)* marketing – that is, taking money from prospective Independent Insurance Agents for a false professional liability insurance product - the required E&O coverage, and *b)* 'selling'- that is, the representation of offer of that false insurance product in the name of MGA Insurance Group, MGA Insurance Group is the company GAINSCO, a Personal Auto Insurance carrier, a company that carries

13

*ONLY* Personal Auto Insurance," this is a matter of Insurance Fraud. (Ex. 5)

The Amerilife and Health Services Insurance company, License No.: L056750; License Type: 21-05 is engaged in a scheme that illegally markets - professional liability insurance coverage / Errors and Omissions (E&O) insurance, that is determined Fraud and Swindle, under *18 U.S.C. §1341* and renders therefore the Entire Agreement without legal force under Florida state and federal guides that forbid illegal intent as binding in a contract.

Defendant holds plaintiff bound to this fraudulent Agreement and further threatens plaintiff' livelihood by putting this fraud in debt collections. Whereas defendant denied an equitable resolve in plaintiff's request to rescind the agreement, plaintiff per force takes legal action to remedy the seven (7) years this fraudulent debt in collections will compromise plaintiff' ability to secure employment in insurance sales and mar her credit rating.

## II. CLAIMS

*Plaintiff states:*

1) Defendant, Amerilife of North Carolina, LLC, d.b.a. Amerilife and Health Services, LLC is engaged in a fraud that scams money from prospective independent insurance sales agents for a false professional liability insurance

14

product - the required E&O insurance coverage and fraudulently diverts those funds / 'premium payments collected' to an account defendant dubs MGA Insurance Group.

2) Defendant, Amerilife of North Carolina, LLC, d.b.a Amerilife and Health Services, LLC has schemed to extort money from plaintiff by threating debt collections if the money demanded of the E&O fraud is not given to defendant in 30 days.

3) Defendant, Amerilife of North Carolina, LLC, d.b.a. Amerilife and Health Services, LLC has used the United States Postal Service /USPS in the process of perpetrating the fraudulent acts of complaint involving its E&O insurance fraud. Plaintiff received defendant' threat of 'collections' and fictious address by USPS mail.

For this just cause plaintiff brings this action before the Court for remedial damages of $474,050. Damages calculated based on the *October 29th 2021 updated U.S. Bureau of Labor statistics, Occupational Employment and Wages May 2020* report that published the average mean salary for insurance sales agents in the state of Florida to be $61, 570, and in the Tampa, St. Petersburg, Clearwater area, the region of defendant' principal office, it is $67,650.  Defendant' malicious debt

15

collection move in this matter' fraud is remedied in reparations of 7 years of the average salary of $67,650 (i.e., $473,550) plus $500 for court costs, equaling therefore, $474,050. Costs to be paid retroactively should the Court grant plaintiff' within application to proceed without prepaying costs.

## **ARGUMENT IN SUPPORT OF GRANT OF RELIEF**

Black' Law Dictionary defines Fraud as, 'A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment [also], fraud consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury." In Webster dictionary fraud is, 'the intentional perversion of truth [a false representation] in order to induce another to part with something of value [such as money, property] or surrender a legal right; it is an act of deceiving or misrepresenting'.

US laws hold fraud as both a civil tort and criminal wrong. (*Cornel Law School, Legal Information Institute*). Prosecuted criminally or for civil damages, as in instant case, the elements of U.S. laws *18 U.S. Code §§ 1341-1342* on Mail Fraud are substantiated in this matter and plaintiff invokes constitutional privilege guarded in *28 U.S.C.§1654* to pursue individual civil damages.

16

Plaintiff brings this action under 18 U.S. Code §§ 1341-1342 that states,

*§1341,*

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or

intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or

thing whatever to be sent or delivered by any private or commercial interstate

carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

*§1342,*

"Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in *§1341* or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such

17

fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both."

The *US Department of Justice, Justice Manual, (JM*, 9-43.100, updated Jan. 21, 2020) gives the two components of Mail Fraud in:

"There are two elements to this code of in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . §1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

This is captured in NY criminal attorneys, Crotty and Saland' observation,

"Mail Fraud is one of the most commonly charged White Collar Federal criminal offenses. Essentially, the Mail Fraud statute makes it illegal for anyone to use, or cause the use of, the United States Postal Service (or any private commercial interstate mail carrier, such as UPS or FedEx), during the course of a scheme to take money from another by fraud or false pretenses. … A common misconception about Mail Fraud is the belief that the lie or fraud itself must involve the mail. In reality, all that must be proven is that the mail was used or

18

caused to be used during the course of the fraud – any innocent or otherwise innocuous mailing can bring the crime within the law's jurisdiction." (Crotty and Saland, webpage)

Despite the prevalence of Mail Fraud and the broad application of the statute in criminal prosecution, the two elements of the statute give precision in jurisdictional appropriation in civil actions.

### I.  MAIL FRAUD IS SUBSTAIATED WHEREIN DEFENDANT INTENDED TO AND DEVSISED A SCHEME THAT DEFRAUD AND WHEREIN DEFENDANT, AMERILIFE PERFORMED SPECIFIC FRAUDULENT ACTS.

Defendant' fraudulent scheme involves the swindle of 'premium payments' for sham professional liability /Errors and Omission (E&O) insurance coverage from insurance sales agents. The scam, evinced in this case, begins with a company representative, often an office manager, initiating contact, telephone contact in this case, to offer an insurance sales agent position. On or around September 20th 2021 plaintiff received such a phone call and job offer from defendant claiming to be in receipt of plaintiff' resume. This is untrue. Plaintiff had never heard of Amerilife prior to that call. Defendant may have had access to the state's database of recently licensed individuals – plaintiff had acquired a Florida insurance sales license, Aug. 18th, 2021; or has access to resumes posted online (to be clear, plaintiff had no

19

resume posted online; defendant offers to pay for getting the license for those not already licensed), but however defendant gets prospects for Amerilife' E&O insurance scam, this matter' injuries from defendant' deceit and misrepresentations substantiating its fraud began in this falsehood of defendant' initiating telephone contact.

Plaintiff was immediately offered an insurance sales agent position with defendant upon the interview. The routine business practice of signing onboarding papers was executed on Oct.1st 2021with defendant.  The documents / onboarding papers bear the title, Independent Agent Agreement and are appended in entirety. (Ex. 2 – numbered pages 1-51). The Agreement is of numerous references to agree not to take action against defendant in a court of law; it places restrictions on insurance sale as an independent agent outside of the company; and gives the substance of the fraud at page 36 in: **"Authorization to Collect Premiums for Errors and Omissions Insurance Coverage. Whereas Amerilife Group, LLC. Desires to offer, as service to the independent agents contracted with Amerilife, Errors and Omissions Insurance Group Coverage provided MGA Insurance Group.  The cost to each agent of said E&O insurance is a monthly fee of $50. Amerilife Group, LLC will promptly make the necessary payments to MGA Insurance Group for said insurance coverage."**  On the following page the Agreement imputes that the

20

agent will pay a minimum of $500 upon termination of the contract. (pg. 37)

According to Insureon, Insurance Holding Agency, "the median cost of E&O insurance is about $45 per month, or $550 annually, for insurance professionals." Plaintiff initially resisted cancelling her existing E&O coverage with biBerk at $41.58 per month (Ex. 4) to purchase defendant' offering at $50 but was forced to cancel the policy upon defendant' statement that plaintiff would not be allowed to work with defendant / keep defendant' insurance sales job offer without the purchase of defendant' E&O insurance.

Under Florida Administrative Code Anti-Coercion Insurance Statute, it is illegal to force someone to buy insurance from a specified company *RULE 69B-124.002, F.A.C.*. Defendant' illegality of coercion goes beyond mere 'inducement' however, it effects both context and base for defendant' substantial frauds of the onboarding papers - the Independent Agent Agreement.

### *Defendant's Manifest Acts of Fraud*

Duplicity, false representations, and theft/misappropriation of premiums characterize defendant' fraudulent practices in the fraud of sham E&O Group insurance coverage provision for independent insurance sales agents it states.

*Count One of the Claims,*

*Defendant, Amerilife of North Carolina, d.b.a. Amerilife and Health Services is*

21

*engaged in a fraud that scams money from prospective independent insurance*
*sales agents for a false professional liability insurance product - the required E&O*
*insurance coverage and fraudulently diverts those funds / 'premium payments*
*collected' to an account defendant dubs MGA Insurance Group.*

Amerilife and Health Services, LLC is an agency licensed to market life and
health insurance. Its License No. in the state of Florida is, L056750 and License
Type: 21-05. Professional liability insurance coverage is outside the range of it
product sales and indeed defendant' Independent Agent Agreement/ the
Agreement, substantiating the fraud does not name Amerilife the carrier of the
E&O coverage. (The subsequent spread sheet accompanying the USPS mailed
termination letter does.) The Agreement states, [for] "the independent agent
contracted with Amerilife, Errors and Omission Insurance Group Coverage [is]
provided by MGA Insurance Group [and] the cost to each agent is $50 per month."
(Ex. 2, pg. 36) The only truth in this statement is the $50 /month defrauded from
each agent. There is *no* E&O coverage provided to independent agents from this
Agreement and there is certainly *no* E&O coverage provided by MGA Insurance
Group. MGA Insurance Group is the company GAINSCO - an insurance carrier of
*only* personal auto insurance and neither affording insurer, Markel American
Insurance Co. nor the producer/broker, Calsurance of the bogus group E&O
coverage certificate of holding has knowledge of or dealings with MGA Insurance

22

Group with respect to Amerilife's insurance contracts with / handled by them.

Nowhere in the Independent Agent Agreement does defendant refer to the Independent Agent as a Career Agent, yet the independent agent' certificate of holding of purported policy arising from this Agreement is called a career agent policy with Markel American Insurance Co. This is not matter of semantics, this 'switch' / double talk is purposeful for defendant' out and out insurance fraud in the swindle of premiums from independent agents for a sham insurance product / E&O insurance, and for defendant' possible tax fraud and theft.

To begin with, there is *no* E&O coverage provided by MGA Insurance Group. MGA Insurance Group is GAINSCO – that provides *only* personal auto insurance. Defendant' explicit representation of fiduciary responsibilities in the Insurance Agent Agreement to, "promptly make the $50 monthly "premiums" payment to MGA Insurance Group for E&O coverage" is to an entity that does not appear on the certificate of holding proffered to the independent agent of the Agreement, nor is MGA Insurance Group known to the affording insurer, Markel American Insurance Co. or the producer/broker, Calsurance that do appear on the certificate.

Plaintiff noting inconsistencies regarding policy term dates on the certificate of holding she was given and that proffered to Florida' Department of Financial Services, Division of Investigative and Forensic Services, Bureau of Insurance

23

Fraud, raised questions to the policy broker, Calsurance about the authenticity of the certificate of holding purporting group E&O coverage. Calsurance' answer on Dec. 29th '21 (Ex. 9) gave that the certificate of holding plaintiff was given is a Career Agent policy and is one that changes in policy number ID each calendar year. The broker explained that an Independent Agent policy also exists, and is the one of which certificate of holding was given the DFS. The difference in policy term dates, the broker states, is because that policy - the Independent Agent policy, is renewed based on a year-end date that begins on start date of the policy, as opposed the Career Agent policy on every Jan. 1st irrespective of date of policy initiation.

This duplicity is not as benign as might appear. The two policies vary by one digit in policy number - MKLM7PLCA00037 for the Independent Agent policy and MKLM7PLCA00038 for the Career Agent policy. Defendant' fraud of establishing a false policy number for a claim founded in the independent agent agreement (whereas the independent agent (of the Independent Agent Agreement) is NOT given the Independent Agent policy certificate), is further compounded in at least two policy numbers for the same policy - that is, each policy, the Independent Agent policy and the Career Agent policy each has at least two separate policy ID numbers.

24

The duplicity is doubled or quadrupled depending on the factor used in two separate policies purporting the same coverage, each policy having at least two policy numbers for the same coverage. 'Double' duplicity in two identical insurance contracts - the respective, Independent Agent policy and Career Agent policy, defendant builds a quadruple effect into the fraud in that these two policies each has at least two policy ID numbers, MKLM7PLCA00037 & MKLM7PLCA00057 for the independent Agent policy and MKLM7PLCA00038 & MKLM7PLCA00053 for the Career Agent policy.

The multiple ID numbers for the policies is significant for denying, or otherwise awarding claims depending on the severity of legal consequences for defendant, they also possibly purpose tax /IRS regulations evasion. Defendant's scheme affords that should the independent agent state a claim under the policy of the certificate given the agent, it can easily be denied -since the agent' certificate is of a different or other-than an independent agent agreement policy, as would reasonably be expected, it is rather a career agent policy, with a different policy number. Just as easily also, weighing the pros and cons for defendant, a claim may be awarded since the policies are only one digit off after all and type error may suffice for the discrepancy – indeed, Captain John Savino of the Orlando office of the Florida' Department of Financial Services, Division of Investigative and

25

<u>Forensic Services, Bureau of Insurance Fraud was given the Independent Agent policy certificate of holding showing a policy term of 10/1/21-10/1/22 purporting to be E&O policy that plaintiff (given the Career Agent policy certificate) was under.</u>

   Plaintiff was given the certificate of holding only after termination from Amerilife and upon her expressed request of defendant' onboarding personnel. That certificate states a policy start date of 10/1/21 and end date on 1/1/22 and is a different, or more accurately, another policy of the same coverage as the Independent Agent policy, called a Career Agent policy that cycles with the calendar year as discussed in the preceding. The Independent Agent policy also has multiple policy ID numbers that are not at all 'explained' in change in policy number upon the new year, since its term ending date is not tied to the calendar year.

   That neither Independent Agent nor Career Agent policy make of MGA Insurance Group Producer or Affording Insurer, the scheme appears to further benefit from the 'duplicate' policies of the same coverage and multiple policy numbers for each contract by establishing a set premium, as in level term. Freeing defendant, vis a vis the Career Agent policy that ends every calendar year, to divert the balance of 'premiums' collected to a fraudulent account dubbed,

26

"MGA Insurance Group" – thus avoiding IRS regulations for Insurance products used as investments / endowment accounts. That the Career Agent policy remains the same but changes the policy number every year on January 1st gives support to defendant possible evasion of taxes / IRS regulations in this scheme. As to the Independent Agent policy, it provides short term or immediate 'band-aid' cover for investigations into defendant' fraud of stealing 'premiums' for sham professional liability insurance coverage, while the Career Agent policy is used as the main vehicle for the insurance fraud and other violations of IRS guides. Yearly changes or changes in the Independent Agent policy number that don't bother to tie that to the calendar year suggests tax/IRS regulations evasion therein as well.

Defendant' fraud depletes Government tax revenue 'coming and going' to use the colloquialism whereas the embezzled premiums are properly tax deductible. (Ex. 12)

*Count Two of the Claims,*

*Defendant, Amerilife of North Carolina, LLC, d.b.a Amerilife and Health Services, LLC has schemed to extort money from plaintiff by threating debt collections if the money demanded of the E&O fraud is not given to defendant in 30 days.*

*Fla. Statute sec. 836.05* qualifies extortion in:

"defendant made a verbal or written threat [with] the intent to gain financially, receive property, or otherwise compel the victim to do any act against the victim's

27

will. ... However, Florida law does not require an intent to actually carry out the threat or an ability to perform the threatened act ... [in fact, threat might be relegated to] even psychological harm to the recipient of the threat if the victim does not comply"."

   Plaintiff has been threatened with debt collection action by defendant if defendant's fraudulent demand for $500 from plaintiff is not met in thirty (30) days from Dec. 15th 2021. The fraudulent demand of defendant's scam put in collections harms plaintiff by compromising for seven (7) years any chance of future appointments to sell insurance products or to work in the insurance industry. Plaintiff's ability to make a living is taken away in this threat – and taken away for seven (7) years, the duration of appearance of that debt on credit / background reports. Plaintiff claim of extortion, under Fla. Law needn't prove that defendant, 'actually carry out the threat'. Indeed, the threat might be relegated to "even psychological harm to the recipient of the threat if the victim does not comply". Nonetheless the threat is real - defendant, during the three-day 'Amerilife University' training of Oct. 12th '21 - Oct. 14th '21 that plaintiff attended, made public its acts of similar threats of 'going after agents for money'. This is substantive of defendant's intent to carry out the threat to place its fraudulent demand for money in debt collections that will damage plaintiff' ability to be employed in the insurance industry for a full seven (7) years, the duration debt

28

collection records will show this fraudulent money demand.

## II. DEFENDANT USED THE UNITED STATES POSTAL SERVICE/ THE MAIL TO EXECUTE, ATTEMPT TO EXECUTE FRAUD AND EXTORT MONEY FROM PLAINTIFF

*Count Three of the Claims,*

*Defendant, Amerilife of North Carolina, d.b.a. Amerilife and Health Services has used the United States Postal Service / USPS in the process of perpetrating the fraudulent acts of this complaint involving its E&O insurance fraud. Plaintiff received defendant' threat of 'collections' and fictitious address by USPS mail.*

The complaint annexes a copy of defendant' fraudulent demand for $500 that includes a threat to put this demand in debt collections in thirty days of mailing of the letter. The package is dated and mailed December 15th 2021. (Ex. 1) A copy of the envelop annexed attests to that. (Ex. 1d) Additionally, defendant' further federal Mail Fraud acts under *§1342* of the mail fraud code that forbids the use of the U.S. postal service,

"for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in *§1341* or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or

29

assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both",

is irrefutable for defendant' Mail Fraud acts in giving a fictitious address in the Dec. 15th '21 mailing for defendant' agent releases personnel, Ms. Tracy Miner. The package includes the statement, "Written requests should be addressed to: Tracy Miner, 2650 McCormick Dr., Suite 300L, Clearwater, Florida, 33759. Plaintiff' telephone contact with Ms. Miner's office about this address returned, "there is no such address." Defendant does business from this Clearwater address in fact - perhaps minus the / a fallacious Suite 300L, however, more material here is that the address for Ms. Miner is correctly NOT the (Clearwater) address given but Perhaps -11016 Rushmore Drive Suite 175 Charlotte, NC 28277, her telephone number is, 704-910-0181.

As it is, defendant did not respond to any telephone messages plaintiff left at this number nor to any 'written request' to the email address defendant gives and stresses that inquiries should be sent, i.e., agentreleases@amerilife.com

### III.   DEFENDANT' INDEPENDENT AGENT AGREEMENT IS A FRAUD THAT SCAMS MONEY FROM INSURANCE SALES AGENTS FOR NONEXISTENT / SHAM E&O INSURANCE COVERAGE IN CONTRACTS OF UNINSURABLE INTERESTS AND THEREFORE UNENFORCESABLE / CLAIMS MAY NOT BE CONSIDERED FOR COVERAGE

The facts of this case inevitably evince that defendant has provided NO E&O Insurance Group Coverage with MGA Insurance Group as the Agreement purports (pg. 36). Wherefore, NO E&O coverage exists as represented in the Agreement. Further, whereas the laws of this matter attest that defendant's E&O insurance contracts are without the essential insurable interest for a valid insurance policy, because insurable interest does not exist here, E&O coverage does not exist, that is, the claims under defendant' E&O insurance contracts are not insured / may not be paid / could be refused payment.

Defendant' scam that calls for the agent to be responsible for $50 monthly payments for E&O group insurance coverage through the end of the calendar year in which the agent terminates – *and is no longer a part of the group,* is at best unethical; what it is however is thievery. (Ex. 2, pg.36)

*Fla. Stat. sec. 812.014(1)(b) defines theft in,*

(1) A person [*the legal person of defendant*, Amerilife of North Carolina, LLC. here] commits theft if [he or she] knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

  (b) Appropriate the property to [his or her] own use or to the use of any person not entitled to the use of the property.

Federal law at *18 U.S. Code sec. 664* more pointedly sets defendant's conduct of thievery in:

31

"Any person [*the legal person of defendant the corporation in this civil matter (as opposed, for criminal prosecution, the natural person of*, e.g. John Schrieffer of specified fraudulent acts in executing defendant' thievery] who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both."

*In this civil matter these laws apply to, and are copiously substantiated in, defendant's fraudulent acts of this complaint.* This point relies further on Court teaching in *Moore v. United States*, 160 U.S. 268, 269 (1895), where the Supreme Court defined embezzlement in the following terms: 'Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'

A nonnegotiable for legal effect of any contract or agreement is the element of legal purpose. For the insurance contract, the required insurable interest constitutes the legal purpose. Neither the Independent Agent nor Career Agent policy defendant has with Markel American Insurance Co. for E&O group insurance coverage has insurable interest, whereas these contracts are used to perpetrate a fraud. An insurance contract cannot be for an illegal purpose such a

32

policy is without legal force, invalid. Defendant's 'master policies – both

Independent Agent and Career Agent at Markel are employed in a scheme that

hides defendant's embezzlement / theft of agents' money ("premium payments

collected"), funds that are diverted to a fraudulent account, dubbed MGA

Insurance Group as understood in defendant' Independent Agent Agreement.

The complaint notes further that defendant's two insurance contracts for the

same coverage do not effect double insurance / provide twice the coverage under

*Anti-Stacking Provisions* that state,

"anti-stacking provisions are intended to avoid the application of multiple sets of

deductibles or multiple sets of limits to a single loss event [claim]. … in insurance

policies … they stipulate that, [for a covered claim / event] only one policy limit or

one deductible (rather than the limit or deductible under each policy) applies to the

occurrence." (*International Risk Management Institute (IRMI) Online*, Internet

Source).

Upholding the complaint's: defendant' two policies are manipulated by the

contract holder, defendant as cover for its theft of agents' money and in the

circumvention of tax/IRS rules.

33

Whereas defendant' Independent Agent Agreement is determined illegal and unenforceable under legal purpose doctrine, plaintiff made several appeals to defendant to rescind the Agreement and cancel the fraudulent money demand. Plaintiff' steps involved written communication to the email address defendant gives and stresses that inquiries should be sent, agentreleases@amerilife.com . (See, Exs. 6a - 6b, & 7)

Defendant did not respond to any of plaintiff' email outreaches requesting that defendant cancel the fraudulent demand for money and properly release /sever plaintiff' relations with defendant.  Plaintiff made a final attempt for an equitable end to defendant' fraudulent demand for money in filing a Consumer Complaint of this fraud with Pinellas County on January 13th 2022, ID.: Record CP-INQ-22-00025. (Ex. 10)

Defendant dismissed this final attempt to prevent its fraudulent $500 demand put in debt collections that will certainly compromise plaintiff's ability for future insurance carrier appointments effectively derailing her career in insurance sales / her ability to earn a living in the industry.

Pinellas County forwarded the matter to Florida's Department of Financial Services (DFS) on January 14th 2022 since it is outside their jurisdiction. (Ex. 11)

Plaintiff was given the reference number, T21-15644 (Dec. 29th 2021) from the

34

local DFS office / Orlando Bureau of Investigations of previous outreach to the

DFS, Division of Investigative and Forensic Services (Dec. 28th 2021 and Jan. 2nd

2022) in reports of defendant' fraud that concurrently made the appeal to defendant

to, "Rescind [its] $500 ['bond'] money demand made on me and [for] Immediate

release from Amerilife" to prevent a collection blight on my record / background

check that risks my ability for future employment in the insurance industry.

(Exs. 5 & 8, respectively)

Under Florida law, rescission or cancellation of a contract is proper when the

moving party substantiates the necessary element of "the existence of fraud, false

representation", *Brett Sokolow. et. al v. Dominique Damico et. al* (Case Number:

19-CV-80278-REINHART, Case 9:19-cv-80278-BER, entered on FLSD Docket

12/26/19) citing *Billian v. Mobil Corp.,* 710 So.2d 984, 991 (Fla. 4th DCA 1998).

Whereas defendant denied an equitable resolution and failed to cancel the

fraudulent / illegal / unenforceable Agreement, plaintiff is left with no other

recourse but to take legal action for the injuries that will ensue. Plaintiff' ability to

be employed in the insurance industry is taken away in defendant' illegalities here.

Plaintiff is effectively unemployable in insurance sales for the seven years resultant

defendant' debt collections move for the fraudulent money demand of plaintiff.

35

**WHEREFORE,** plaintiff seeks remedial damages of $474,050.

Damages calculated based on the October 29th 2021 updated *U.S. Bureau of Labor statistics, Occupational Employment and Wages* May 2020 report that published the average mean salary for insurance sales agents in the state of Florida to be $61,570, and in the Tampa, St. Petersburg, Clearwater area, the region of Amerilife' principal office, it is $67,650. Defendant' malicious debt collection action in this matter' fraud is remedied in reparations of 7 years of the average salary of $67,650 = $473,550 plus $500 for court costs = $474,050.

Costs to be paid retroactively should the Court grant plaintiff' within application to proceed without prepaying costs.

## CONCLUSION

In light of the foregoing and with just cause showing, judgment should grant plaintiff the relief of $474,050 remedial damages sought.

*Pro Se* Plaintiff' Certification and Closing Under Federal Rule of Civil Procedure 11:

I, Zoe Ajjahnon certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

36

I, Zoe Ajjahnon agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,
ZOE AJJAHNON, **PRO SE PLAINTIFF**

DATED: 9th February 2022        By: _____

ZOE AJJAHNON, *Pro Se* **PLAINTIFF**

37