UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ZOE AJJAHNON,

    Plaintiff,

v.                                          Case No: 6:22-cv-329-JSS-LHP

AMERILIFE OF NORTH
CAROLINA, LLC,

    Defendant.
_____/

## ORDER

Plaintiff, Zoe Ajjahnon, proceeding pro se, has sued Defendant, Amerilife of North Carolina, LLC, under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968. (Dkt. 11.) Defendant now moves for summary judgment on all claims. (*See* Dkts. 85 & 93.) Plaintiff opposes Defendant's motion, (*see* Dkts. 86 & 95), and moves for modification of the case management and scheduling order, (*see* Dkts. 96 & 98), and for a bench trial, (*see* Dkt. 99). Defendant opposes the motion for modification, (*see* Dkt. 97), but does not oppose the motion for a bench trial, (*see* Dkt. 99 at 1). For the reasons outlined below, the court grants Defendant's motion for summary judgment, denies Plaintiff's motion for modification, and denies as moot Plaintiff's motion for a bench trial.

## BACKGROUND

Plaintiff is a former insurance agent who worked for non-party Amerilife of

Central Florida, LLC, in the autumn of 2021. (Dkt. 82-1 at 31, 64–65, 88.) Defendant and Amerilife of Central Florida are among several regional insurance agency subsidiaries of AL Amerilife, LLC. (Dkt. 84-1 ¶ 8.) As a condition of her employment with Amerilife of Central Florida, Plaintiff executed a contract whereby she agreed to obtain errors and omissions (E&O) insurance from Amerilife and to pay back costs, fees, and advances that Amerilife made on her behalf. (Dkt. 82-1 at 52, 70; Dkt. 83-1 at 5–26, 40–42.) Pursuant to the contract, Amerilife of Central Florida advanced Plaintiff $350 for mandatory training and provided her with office space and an iPad that it expected her to pay for through her commissions. (Dkt. 82-1 at 80, 84–85.)

Plaintiff did not generate any business during her first two months working for Amerilife of Central Florida, and she elected to take a leave of absence in December 2021. (*See id.* at 112–13, 495.) Amerilife of Central Florida terminated her and sent her a letter on December 15, 2021, demanding payment of $500 in contractually based fees. (*Id.* at 212; Dkt. 84-1 at 7–9.) Neither Amerilife of Central Florida nor Defendant collected this debt or reported, or threatened to report, it to any credit agency, collection agency, or insurance reporting agency. (Dkt. 82-1 at 135, 238–39; Dkt. 83-1 ¶¶ 17–18; Dkt. 84-1 ¶¶ 19–20.)

Plaintiff initiated this action against Defendant on February 11, 2022. (Dkt. 1.) After two pleading amendments, (*see* Dkts. 7 & 11), the operative complaint brings several counts under the RICO Act, mainly under the theory that the December 15 letter was an extortionate attempt to collect an unlawful debt, (*see* Dkt. 11). Throughout this action, Plaintiff's claims have been solely against Defendant, not

Amerilife of Central Florida or any other Amerilife affiliate. (*Id.* at 1, 4 (¶ 6); *see also* Dkts. 1 & 7.) On May 12, 2023, Defendant answered the operative complaint denying Plaintiff's allegations and raising various affirmative defenses, including that the complaint failed to state a RICO claim and that Defendant was not a party to the contract giving rise to Plaintiff's claims. (*See* Dkt. 22.)

On June 1, 2023, the court issued the case management and scheduling order in this case. (Dkt. 34.) That order set a discovery deadline of May 31, 2024, and a deadline for dispositive motions, such as motions for summary judgment, of July 2, 2024. (*Id.* at 1.) These deadlines were not extended. (*See* Dkt. 58 (an order denying without prejudice a motion to extend the discovery deadline).) On June 22, 2023, Plaintiff filed a motion seeking summary judgment as to Defendant's affirmative defenses. (Dkt. 38.) On March 5, 2024, the court granted Plaintiff's motion in part and denied it in part. (Dkt. 45.) Plaintiff did not move for summary judgment again before the July 2, 2024 deadline. Defendant timely filed the instant motion for summary judgment on that date. (Dkt. 85.) Plaintiff filed her motion for modification on August 21, 2024. (Dkt. 96.)

## APPLICABLE STANDARDS

On a motion for summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden . . . shifts to the non[]moving party" to "go beyond the pleadings" and "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In resolving the motion for summary judgment, the district court must consider the materials in the record to which the parties cite, but it does not need to consider any other materials in the record. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

"District courts have 'unquestionable' authority to control their own dockets." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (quoting *Canada v. Mathews*, 449 F.2d 253, 255 (5th Cir. 1971)). "This authority includes 'broad discretion

in deciding how best to manage the cases before them.'" *Id.* (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997)). Accordingly, courts have "broad discretion over the management of pre[]trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001). Once a district court sets a schedule of case management deadlines, the "schedule may be modified only for good cause and with the [court]'s consent." Fed. R. Civ. P. 16(b)(4). "This good[-]cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quotation omitted). "If a party was not diligent, the good[-]cause inquiry should end." *Id.* (alterations adopted) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). When conducting the good-cause analysis, courts consider whether the party moving for the scheduling modification was diligent in "ascertain[ing] facts" as early as possible in the case (prior to the filing of the complaint, if possible), in "acquir[ing] information during the discovery period," and in acting on acquired information. *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002) (citing *Sosa*, 133 F.3d 1417).

Although courts "give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se plaintiffs are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with

relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))).

## ANALYSIS

Defendant seeks summary judgment on two grounds: (1) Defendant is an improper party to this action, and (2) in any event, Plaintiff cannot prevail on her RICO claims as a matter of law. (Dkt. 85 at 14–25.) In response, Plaintiff moves for modification of the case management and scheduling order so that she may file a motion for summary judgment. (Dkt. 96.) She also moves for a bench trial. (Dkt. 99.) The court discusses Defendant's two grounds in turn and then addresses Plaintiff's motion for modification. Because Defendant is entitled to summary judgment, the court denies as moot Plaintiff's motion for a bench trial.

1. **Improper Party**

Defendant contends that it is not a proper party to this action because it did not have a contractual or business relationship with Plaintiff and did not otherwise participate in the conduct alleged in the operative complaint. (Dkt. 85 at 14–17.) Plaintiff responds that Defendant "exercised full rights to enforce the contract . . . because it is party to it." (Dkt. 86 at 8; *accord* Dkt. 95 at 6–7.) According to Plaintiff, her former employer, "Amerilife of Central Florida[,] is one [and] the same as any other Amerilife" entity, including Defendant. (Dkt. 82-1 at 18.)

In support of her argument that Defendant is a proper party, Plaintiff relies on paragraph 18 of the contract, (*see* Dkt. 86 at 5–6), which states that "*[f]or purposes of this*

*[p]aragraph 18*, the term 'Agency' includes all affiliated entities of Agency, together with all affiliates and subsidiaries of Ameri[l]ife Group, LLC," (Doc. 83-1 at 9 (emphasis added)).  The contract provides that Florida law governs its interpretation, (*id.* at 11), and under Florida law, contract provisions are interpreted "based on their plain meaning in the light of the entire contract," *Circuitronix, LLC v. Kinwong Elec. (H.K.) Co.*, 993 F.3d 1299, 1304–05 (11th Cir. 2021).  By the contract's plain terms, the expanded definition of "Agency" in paragraph 18 is limited to that paragraph, which pertains to a separate non-competition agreement.  (*See* Doc. 83-1 at 9; *see also* Dkt. 86 at 5–6 (mentioning the separate non-competition agreement).)  Paragraph 18 does not purport to change the parties to the contract.  (*See* Doc. 83-1 at 9.)  For the rest of the contract, "Agency" refers to "Amerilife and Health Services of Central Florida."[1]  (*See, e.g.*, *id.* at 5).

In addition, Plaintiff relies on paragraph 31 of the contract to support her position.  (*See* Dkt. 86 at 7–8; Dkt. 95 at 5; *see also* Dkt. 83-1 at 12.)  Under the subheading "Enforcement," paragraph 31 provides that the "affiliates of the Agency . . . are expressly intended by the parties to be intended third[-]party beneficiaries of [the contract] and have full rights to enforce [the contract] as if they were a party hereto."  (Dkt. 83-1 at 12.)  Plaintiff claims that because this provision makes Defendant an intended third-party beneficiary of the contract, Defendant is a party to the contract and can be sued for events arising out of the contract.  (*See* Dkt.

---

[1] Amerilife of Central Florida was previously known as Amerilife and Health Services of Central Florida.  (Doc. 83-1 ¶ 9.)

86 at 7–8.) "As a general rule, non-parties to a contract, such as Defendant[], can neither sue nor be sued for breach of a contract to which they were not parties." *Solnes v. Wallis & Wallis, P.A.*, No. 13-61225-CIV-ROSENBAUM/HUNT, 2013 U.S. Dist. LEXIS 100596, at *9 (S.D. Fla. July 18, 2013) (citing *Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. Dist. Ct. App. 2005), and *Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004)). Where, as here, "a non-party is a specifically intended beneficiary of the contract, however, . . . the non-party may sue for breach of contract." *Id.* (citing *Morgan Stanley*, 873 So. 2d at 403). Nonetheless, Plaintiff has not presented any "authority indicating that such a beneficiary may *be sued* for breach of contract." *Id.* at *12. Indeed, allowing suit to proceed against a non-party to a contract, such as Defendant, would "transgress principles of contract law" because it would require the court to "bind a third party to actions to which it did not affirmatively agree." *Id.* at *13. Although Plaintiff brings RICO claims instead of breach of contract claims, this reasoning applies here because Plaintiff bases her claims on her purported contractual relationship with Defendant. (*See* Dkt. 86 at 8 ("Defendant's contract . . . carr[ies] out the RICO violations of Plaintiff's claims." (emphasis omitted)).)

Plaintiff further contends that because the December 15 letter states that the $500 bond is payable to "Ameri[l]ife of Polk County, LLC," rather than Amerilife of Central Florida, all Amerilife entities could be proper parties to this action. (Dkt. 86 at 3; *see* Dkt. 84-1 at 7.) John Schrieffer, a vice president with Defendant, stated in an affidavit that the designation of "Ameri[l]ife of Polk County, LLC" as the payee was

a scrivener's error. (Dkt. 84-1 ¶ 17.) Plaintiff speculates, without evidence, that the designation was not a scrivener's error. (*See* Dkt. 86 at 2–5.) Plaintiff's argument is unpersuasive because it is conclusory and devoid of legal authority. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (rejecting a "conclusory argument" because the party advancing it "d[id] not explain [its] legal basis" or cite "legal authority to support it"). Plaintiff also argues that Defendant is a proper party because the December 15 letter was sent by Schrieffer. (Dkt. 86 at 4; *see* Dkt. 84-1 ¶ 18.) Schrieffer stated in an affidavit that the "individual in charge of sending" Plaintiff's letter and "similar letters sent to other agents is based in North Carolina and works from [Defendant's] office," (Dkt. 84-1 ¶ 18), which explains why Defendant's address appears on the letter as the "send to" address for the requested payment, (*id.* at 7). Plaintiff does not put forward evidence to counter this explanation but again relies on conclusory argument devoid of legal authority to assert that Defendant is a proper party to this action. (*See* Dkt. 86 at 4.) *See Markovich*, 95 F.4th at 1379.

"[W]hen a plaintiff files suit against the wrong company, a court may grant summary judgment in favor of the improperly named defendant." *Cacho v. Monevo, Inc.*, No. 6:22-cv-1998-PGB-RMN, 2023 U.S. Dist. LEXIS 207057, at *4 n.2 (M.D. Fla. Apr. 14, 2023) (citing *Overstreet v. Southern Ry. Co.*, 371 F.2d 411, 412 (5th Cir. 1967)). There is no genuine dispute that Defendant is not a proper party to this action, for it did not have the contractual relationship with Plaintiff on which she bases her RICO claims. Defendant is thus entitled to summary judgment on that basis alone.

### 2. RICO Claims

On the merits, Plaintiff alleges that Amerilife, including Defendant and other subsidiaries, has engaged in an ongoing criminal enterprise involving extortion of payment of illegal debt via mail and wire fraud. (*See* Dkt. 11.) Plaintiff claims that Defendant recruits individuals to become insurance agents, coerces them into agreeing to pay back certain debts in their employment contracts, and ultimately extorts them into paying back the debts. (Dkt. 86 at 9; *accord* Dkt. 95 at 5–6 (describing the December 15 letter as an "extortionate demand for money").) Plaintiff labels the resultant debt as "unlawful" and the interest rate associated with the debt as "usurious." (Dkt. 86 at 9; *accord* Dkt. 95 at 6 (accusing Defendant of "unlawful debt collection").) Plaintiff submits that Defendant "embezzles" its agents' required monthly E&O insurance premiums by depositing the premiums into a "nonexistent" E&O insurance group account. (Dkt. 86 at 9–10, 13; *accord id.* at 22.) Based on these allegations, Plaintiff brings claims for RICO violations under 18 U.S.C. § 1962(a)–(d). (*See* Dkt. 11 at 70–112.)

Defendant maintains that there is an absence of evidence in the record to support Plaintiff's claims, (*see* Dkt. 85 at 17–25), and the court agrees. Moreover, Defendant has presented unrebutted evidence in the form of affidavits and deposition testimony that undisputedly establishes three facts. First, the contract to which Plaintiff was a party provided that she had to repay certain costs and advances. (Dkt. 83-1 ¶¶ 22–23.) Second, Amerilife of Central Florida did not embezzle Plaintiff's E&O insurance premiums but acquired bona fide E&O coverage for Plaintiff. (Dkt. 82-1 at

121–24; Dkt. 84-1 ¶¶ 13–14.) Third, Defendant did not report Plaintiff's debt to any third party or otherwise prevent her from working in the insurance industry. (Dkt. 83-1 ¶ 18; Dkt. 84-1 ¶ 20.) "Unrebutted evidence from [a] defendant can be a basis for summary judgment." *McCormick v. Se. Pers. Leasing, Inc.*, No. 22-10466, 2022 U.S. App. LEXIS 26877, at *3 (11th Cir. Sept. 26, 2022) (citing *Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1054–58 (11th Cir. 2020)).

Further, Plaintiff's claims under section 1962(a) to (d) are each deficient. The plaintiff in a civil RICO case must prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006)); *see also Ironworkers Loc. Union No. 68 v. AstraZeneca Pharms. LP*, 585 F. Supp. 2d 1339, 1342–43 & n.3 (M.D. Fla. 2008). "A plaintiff . . . must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a ten[-]year period." *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008) (quoting 18 U.S.C. § 1961(5) and *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311–12 (11th Cir. 2000)). A "plaintiff must also show '(1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Williams*, 465 F.3d at 1282–83).

In opposing Defendant's motion, Plaintiff relies on a Florida regulation

prohibiting "coercion in any form or manner . . . in connection with any insurance transaction," (Dkt. 86 at 11, 18 (quoting Fla. Admin. Code r. 69O-184.020)), and states that Defendant violated the regulation by coercing her into purchasing its E&O insurance, (*id.* at 11 (asserting that Defendant's scheme requires agents "to purchase only Defendant's E&O insurance offering")). She likewise states that the December 15 letter qualifies as extortion under federal and Florida statutes. (*Id.* at 15–16 (citing 18 U.S.C. § 875 and Fla. Stat. § 836.05).) However, these arguments are unpersuasive because Plaintiff fails to explain, through citation to legal authority, how Defendant's conduct constitutes coercion under the regulation or how the letter constitutes extortion under the statutes. (*See id. passim*.) "Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non[]moving party, not the court." *HRCC*, 703 F. App'x at 816–17 (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)); *see also Markovich*, 95 F.4th at 1379. Plaintiff does not meet this responsibility.

The claims also fail because Plaintiff cannot demonstrate the existence of a RICO enterprise. Plaintiff appears to assert that the RICO enterprise in this case is Amerilife and its affiliates or Amerilife's officers and executives, especially Schrieffer. (*See* Dkt. 86 at 3, 8, 12, 19–22.) The RICO Act defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity" and "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). However, "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of

their roles for the corporation because a corporation necessarily acts through its agents and employees." *Ray*, 836 F. 3d at 1357. "Labeling [a corporate defendant] as an enterprise . . . would only amount to referring to the corporate 'person' by a different name." *Id.* Plaintiff contends that "Defendant is a liable 'person' . . . that[,] by a pattern of racketeering activities[,] derives fraudulent E&O premium payments." (Dkt. 86 at 15 (citing Dkt. 11 ¶¶ 96–391).) Plaintiff seems to have conflated "person" and "enterprise" as legal concepts and, in any event, has not shown the existence of a RICO enterprise.

Finally, Defendant is entitled to summary judgment because there is no evidence that Plaintiff suffered an injury as a result of Defendant's purported misconduct. *See Ray*, 836 F.3d at 1349. The "connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect." *Id.* (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006), and *Williams*, 465 F.3d at 1287–88). Defendant has presented unrebutted evidence that the $500 debt was consistent with Plaintiff's contract with Amerilife of Central Florida and that the debt was not collected or reported to a third party. (Dkt. 82-1 at 135, 210–11, 238–39; Dkt. 83-1 ¶¶ 17–18; Dkt. 84-1 ¶¶ 19–20.) Even when viewed in the light most favorable to Plaintiff, the record shows that she did not suffer an injury under the RICO Act through Defendant's attempt to collect a debt from her. Accordingly, as a matter of law, Plaintiff cannot prevail on her RICO claims.

### 3. Plaintiff's Motion for Modification

The court issued the case management and scheduling order on June 1, 2023.

(Dkt. 34.) That order required all dispositive motions to be filed on or before July 2, 2024. (*Id.* at 1.) Plaintiff has already filed one motion for summary judgment, (*see* Dkt. 38), which the court granted in part, (*see* Dkt. 45). On August 21, 2024—fifty days after the deadline for dispositive motions—Plaintiff filed the instant motion for modification of the case management and scheduling order so that she may file a second motion for summary judgment in this case. (Dkt. 96.)

Federal Rule of Civil Procedure 16(b)(4) provides that the schedule set by the court in the case management and scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiff's motion does not establish good cause. (*See* Dkts. 96 & 98.) The closest Plaintiff comes to explaining why she could not have filed her intended summary-judgment motion by the deadline is a single statement that she "received the evidence supporting" the motion "after the close of discovery." (Dkt. 98 at 5.) She does not elaborate further. (*See id. passim*.) Because she frames her intended motion as a "counter-motion," (Dkt. 96 at 2–5; *accord* Dkt. 98 at 4–5 ("as in 'counteraction' to Defendant's summary[-]judgment motion")), the court speculates that she means that she could not have filed her motion until after July 2, 2024, when Defendant filed its motion along with supporting evidence. (*See* Dkts. 82-1, 83-1, 84-1, & 85.) However, in the court's experience, opposing parties routinely file competing motions for summary judgment on the same day, *see Sys. Unlimited, Inc. v. Cisco Sys., Inc.*, 228 F. App'x 854, 856 (11th Cir. 2007) ("On November 29, 2005, the parties filed cross[ ]motions for summary judgment."); *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 874 (11th Cir. 2020) ("That same day, the parties

filed [c]ross [m]otions for [s]ummary [j]udgment."), and Plaintiff does not explain why she could not have done so in this case, *see Ventron Mgmt., LLC v. Tokio Marine Specialty Ins. Co.*, No. 20-80262-CIV-CAN, 2021 U.S. Dist. LEXIS 120684, at *4 (S.D. Fla. June 3, 2021) (denying the defendant's motion for leave to cross-move for summary judgment after the deadline to file motions for summary judgment when the defendant "present[ed] no good reason" for the requested extension "other than apparently" the defendant's "strategic decision to wait to file its own motion for summary judgment until [the p]laintiff had filed its motion for summary judgment").

More to the point, the court should not have to speculate as to Plaintiff's basis for the requested scheduling modification. As the party seeking to extend the deadline for dispositive motions, Plaintiff must establish that she has been diligent in acquiring information through discovery and in acting on the information that she has acquired. *See Sosa*, 133 F.3d at 1418; *Lord*, 223 F. Supp. 2d at 1277. Plaintiff fails to establish due diligence and thus good cause; therefore, the court denies her motion. *See Hermann v. McFarland*, No. 22-10644, 2022 U.S. App. LEXIS 27130, at *10–11 (11th Cir. Sept. 28, 2022) ("Even if she were surprised by the extent of the [d]efendants' summary[-]judgment motion and supporting documents, [the plaintiff] waited over a month to ask for an extension. Given the relationship between good cause and diligence, the district court did not abuse its discretion in refusing [her request]."); *Valencia v. Affiliated Grp., Inc.*, No. 07-61381-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 73008, at *12-13 (S.D. Fla. Sept. 23, 2008) (denying the plaintiff's motion for an extension of time because she did "not demonstrate[] good cause for her failure

to adhere to the [c]ourt's deadlines" when she "d[id] not articulate any explanation as to why [she] waited until more than a month after the . . . dispositive[-]motion cutoff to request" the extension).

## CONCLUSION

Accordingly:

1. Defendant's motion for summary judgment (Dkt. 85) is **GRANTED**.

2. Plaintiff's motion for modification (Dkt. 96) is **DENIED**.

3. Plaintiff's motion for a bench trial (Dkt. 99) is **DENIED as moot**.

4. The Clerk is **DIRECTED** to enter judgment in favor of Defendant, to terminate any other pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on November 7, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties
Counsel of Record